[S. F. No. 7817. In Bank.—January 4, 1917.]

CELIA GRAZIANI, Petitioner, v. THOMAS C. DENNY, as Judge of the Superior Court of Sonoma County, Respondent.

JUDGE PRO TEMPORE—CONSTITUTIONAL PROVISION AUTHORIZING IS SELF-EXECUTING.—Section 8 of article VI of the constitution, authorizing a cause in the superior court to be tried by a judge *pro tempore* agreed upon by the parties, both before and after its amendment in 1910, was self-executing and required no act of the legislature to make it effective.

ID.—POWER OF PRO TEMPORE JUDGE NOT EXCLUSIVE—JURISDICTION OF REGULAR JUDGE — VACATION OF JUDGMENT.—That constitutional provision, as amended in 1910, authorizing the *pro tempore* judge to act in "such capacity in all further proceedings" in the cause tried before him until the final determination thereof, does not confer an exclusive power on him, or oust a duly elected and qualified judge of the superior court of the county of jurisdiction to hear and determine a motion to vacate the judgment rendered by the *pro tempore* judge.

APPLICATION for a Writ of Prohibition directed to a judge of the Superior Court of Sonoma County.

The facts are stated in the opinion of the court.

W. F. Cowan, for Petitioner.

L. E. Johnson, and Geary & Geary, for Respondent.

SLOSS, J.—This is an application for a writ of prohibition against Honorable Thomas C. Denny, one of the judges of the superior court of Sonoma County.

On September 28, 1915, the petitioner, Celia Graziani, commenced a divorce action in said superior court against her husband, Emil Graziani. The defendant filed his answer, and there was also filed a stipulation, signed by said Celia and Emil Graziani, plaintiff and defendant in the action, that L. E. Fulwider, a member of the bar, duly admitted to practice in all the courts of the state, might act and proceed in said cause as judge *pro tempore*.

Mr. Fulwider duly qualified as such judge *pro tempore,* and proceeded to hear and try said action of divorce. Having

heard evidence, he signed, made, and entered as such judge *pro tempore* an interlocutory judgment or decree determining that the plaintiff, Celia Graziani, was entitled to a divorce from said Emil Graziani, and awarding the custody of the minor children of the marriage to the said plaintiff. All of these proceedings, from the filing of the complaint to the decree, were had within the space of a single day.

On the fifteenth day of March, 1916, within six months after the entry of the interlocutory decree, Emil Graziani filed in said superior court a notice directed to Celia Graziani and her attorney, notifying them that he would, at a given time, move said superior court for an order setting aside, vacating, and annulling the interlocutory decree of divorce, upon the grounds that the court acting, or presuming to act, through said L. E. Fulwider as judge *pro tempore,* had no jurisdiction, and that the judgment had been obtained through collusion and fraud. At the time specified in the notice, said Emil Graziani, by his attorneys, appeared in said superior court, and requested the respondent, a duly elected, qualified, and acting judge of said court, to hear said motion. The plaintiff, Celia Graziani, objected to any hearing in said action by Judge Denny on the ground that L. E. Fulwider, as judge *pro tempore,* was present and willing and able to proceed, and that he alone had jurisdiction to act in the case. The respondent overruled these objections, and announced his intention of proceeding with the hearing of the motion. The purpose of the present proceeding (in which an alternative writ of prohibition has been issued) is to restrain Judge Denny from proceeding with the hearing of the motion.

The authority for the selection of Mr. Fulwider as judge *pro tempore* is found in section 8 of article VI of the constitution. That section, in its first form, read in part as follows: "But a cause in the superior court may be tried by a judge *pro tempore,* who must be a member of the bar, agreed upon in writing by the parties litigant or their attorneys of record, approved by the court, and sworn to try the cause." In 1910 the section was amended by the elimination of the words "approved by the court," and the addition of the following clause: "and the person so selected shall be empowered to act in such capacity in all further proceedings in any suit or proceedings tried before him until the final determination thereof." The original provision was carried into the stat-

CLXXIV Cal.—12

utes by the adoption of section 72 of the Code of Civil Procedure, which includes, in addition to the above-quoted language of the constitution, a provision for the oath to be taken by the judge *pro tempore,* and a declaration that his action shall have the same effect as if he were a judge of the court. We think it clear, however, that the constitutional provision, both before and after the amendment of 1910, was self-executing, and that it required no act of the legislature to make it effective.

The most notable feature of the amendment of 1910 is the elimination of the requirement that the selection of a judge *pro tempore* by the parties must be approved by the court. Section 8 of article VI, as it now reads, commits the choice entirely to the will of the parties. In the ordinary adversary proceeding, this mode of conferring judicial power seems unobjectionable enough. The trial of a cause before a person selected by the parties to act as judge may be likened to an arbitration, in which issues of law and fact are determined by "one or more persons" designated by the parties in interest. (Code Civ. Proc., sec. 1281 et seq.) It is manifest, however, that the appointment, under the unrestricted will of the parties, of any member of the bar as judge of a cause, may lead to very questionable, not to say scandalous, practices, when applied to litigation in which the public has an interest, separate and distinct from, and perhaps antagonistic to, that of the formal parties. The best illustration of such litigation is the very kind of case here involved, namely, an action for divorce. While the husband and wife are the only necessary parties to an action for divorce, the maintenance and protection of the marriage relation are matters of such concern to the state that divorce litigation has under our law, and that of other jurisdictions, been hedged about with a variety of restrictions unknown to other judicial proceedings. The danger of collusion in divorce proceedings is so great that special precautions are thought to be required to guard against it. For example, it is provided that divorces cannot be granted upon default or upon the uncorroborated statement, admission, or testimony of the parties. (Civ. Code, sec. 130.) For these reasons, it is insisted by the respondent that the provisions of section 8, article VI, of the constitution have no application to divorce proceedings. It is claimed that in such cases there are in effect three parties—the plaintiff, the de-

fendant, and the state—and that the agreement of the plaintiff and defendant alone will not suffice to empower a person selected by them to act as judge.

While we fully recognize the dangers inherent in the trial and determination of divorce cases by persons selected by the parties themselves, we do not find it necessary here to determine whether section 8 of article VI permits this procedure. Assuming that it does, we see no ground for holding that Judge Denny, a duly elected and qualified judge of the superior court of Sonoma County, is without jurisdiction to act in a case regularly pending in that court. The constitutional provision authorizes a judge *pro tempore* to try a cause, and empowers him to act "in such capacity in all further procedings" in the cause tried before him until the final determination thereof. For the purposes of the particular case, he is given by the constitution the same power that is vested in the regularly elected and qualified judge of the court. But there is nothing in the constitutional provision which declares that his power shall be exclusive, or that it shall be in any way greater than that of elected judges. "The jurisdiction of causes is vested by the constitution in the court, not in any particular judge or department thereof. The constitution, in fact, says nothing about departments. It provides that there may be as many sessions of the court at the same time as there are judges (Const., art. VI, sec. 6); but, whether sitting separately or together, the judges hold but one and the same court, and the jurisdiction they exercise in any cause is that of the court, and not the individual. The division into departments is purely imaginary, and for the conveniences of business and of designation. Transferring a cause for trial or disposition from one of those departments to another does not effect a change or transfer of the jurisdiction of that cause; that remains at all times in the court as a single entity." (*White* v. *Superior Court,* 110 Cal. 60, 67, [42 Pac. 480]; see, also, *Carter* v. *Lothian,* 133 Cal. 451, 454, [55 Pac. 962].) The superior court of Sonoma County has two judges. For the purpose of this divorce proceeding, it may be said that the court has three judges. Any judge of the court has authority to act in a cause pending in the court. If one of them exercises authority in a matter which should more properly be heard by another, his action would constitute, at most, an irregularity. But the objection would not in any event be

one going to the jurisdiction, which alone is involved in prohibition. The motion to vacate the judgment was presented, not to any individual judge, but to the superior court of Sonoma County, and there is no ground for holding that any judge of that court is without jurisdiction to entertain such motion.

The alternative writ is discharged and the proceeding dismissed.

Shaw, J., Melvin, J., Henshaw, J., Lorigan, J., Lawlor, J., and Angellotti, C. J., concurred.